IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA HARRISON,  : | |
|     Plaintiff  : | CIVIL ACTION NO. 12-5017 |
| : | |
| v.  : | |
| : | |
| MEGABUS NORTHEAST, LLC,  : | |
| d/b/a MEGABUS.COM  : | |
| : | |

**MEMORANDUM OPINION**

Rufe, J.                                                                                                                October 8, 2013

    Plaintiff filed a negligence action against Defendant, alleging that she was descending a staircase as a passenger on a Megabus when, due to the driver's negligence, the bus suddenly and unexpectedly jolted, causing her to fall down the stairs and suffer injuries. Before the Court is Defendant's Motion for Summary Judgment.

**I.    FACTUAL BACKGROUND**

    On August 28, 2010, Plaintiff and several of her relatives were passengers on the upper deck of a Megabus traveling from New York to Philadelphia.[1] This was Plaintiff's first ride on a Megabus.[2] Plaintiff remembers being in heavy traffic for much of the trip, and especially as the bus got closer to Philadelphia.[3]

    At some point during the trip, possibly after the bus had entered the city of Philadelphia, but while the bus was still on a highway,[4] Plaintiff attempted to descend the stairs from the upper

---

[1] Linda Harrison Dep. 36:18; 37:12-15; 39:6-8.

[2] Linda Harrison Dep. 40: 4-6 [Doc. No. 17, Ex. A].

[3] Harrison Dep. 40:16-41:1.

[4] Harrison Dep. 41:2-24.

deck to the lower deck so that she could use the restroom.  Plaintiff testified that the bus was stopping and starting as she walked the short distance from her seat to the stairs, and she needed to hold on to the back of the seats as she walked.[5]  The bus had been consistently jerking and jolting for a long time before her fall.[6]  She could see the heavy traffic through the window.[7]  Other passengers confirm that the bus was in notably congested, stop-and-go traffic for some time before the fall occurred.[8]

Plaintiff paused at the top of the stairs to wait for a safe moment to proceed.[9]  But as she took a step, the bus jerked and she lost her balance.[10]  After her fall, her right ankle and toe became swollen, and her ankle was discolored.[11]  A few days later, she began experiencing right hip and lower back pain.[12]

Plaintiff testified that, in her opinion, the driver was driving too fast for conditions, although she was not exceeding 55 mph on the highway due to the volume of traffic.[13]  Her niece also testified that the driver was driving too fast for conditions.[14]

---

[5] Harrison Dep. 42:24-44:15.

[6] Harrison Dep. 43:10-22.

[7] Harrison Dep. 43:4-9.

[8] Portia Green Dep. 9:1-12 [Doc. No. 17, Ex. C]; Elaine Horne Dep. 8:9-13 [Doc. No. 17, Ex. D].  Portia Green is Plaintiff's daughter and Elaine Horne is Plaintiff's sister.

[9] Harrison Dep. 44:18-45:6.

[10] Harrison Dep. 21:22-22:20.

[11] Harrison Dep. 19:20-22, 48:3-20.

[12] Harrison Dep. 20:4-19.

[13] Harrison Dep. 42:7-23.

[14] Rachel Horne Dep. 12:13-23 [Doc. No. 17, Ex. E].

The bus driver, Stephanie Clark, testified that she sometimes would make an announcement asking passengers to remain in their seats in especially congested driving conditions, especially in Manhattan, but she did not think the driving conditions on the day of Plaintiff's injury warranted such an announcement.[15] She testified that the traffic that day was heavy, requiring some alternating of braking and accelerating, but not abnormally so.[16] Ms. Clark was not aware that Plaintiff had fallen until after the bus arrived at the station and the passengers had disembarked,[17] and as Plaintiff and the other witnesses were also unclear as to the physical location of the bus at the time of her fall, Ms. Clark was not able to testify as to the specific traffic conditions at the time Plaintiff fell.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[19] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[20] A party asserting a fact is genuinely disputed must support the assertion by citing to materials in the

---

[15] Stephanie Clark Dep. 36:22-25; 37:19-25; 39:2-5; 43:6-15 [Doc. No. 17, Ex. F; Doc. No. 22, Ex. 9].

[16] Clark Dep. 20:4-8 and 13-15.

[17] Clark Dep. 26:4-29:9. Plaintiff used the back staircase on the bus, which cannot be seen from the driver's seat. Clark Dep. 45:3-9, 48:9-11.

[18] Fed. R. Civ. P. 56(a).

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[20] *Id.*

3

record or showing that the materials cited do not contain admissible evidence to support the fact.[21] In considering a summary judgment motion, the Court does not weigh the evidence or make credibility determinations; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[22]

## III. DISCUSSION

To succeed on a negligence claim under Pennsylvania law, Plaintiff must show that: 1) Defendant owed a duty of care; 2) Defendant breached that duty; 3) the breach resulted in injury; and 4) Plaintiff suffered actual damage.[23] As Plaintiff notes, common carriers, such as Megabus, owe passengers the highest duty of care.[24] Plaintiff argues that Megabus breached its duty of care by operating the bus in an unreasonable manner or by failing to warn passengers of a dangerous condition. Megabus argues that the bus was operated in a safe and reasonable manner, and that there was no duty to warn passengers that the bus might lurch or jerk in traffic.

When an injury is allegedly caused by the jerking, lurching, or sudden braking of a common carrier, showing that the bus jerked or braked

> suddenly or violently is not sufficient, of itself, to establish negligence in its operation. There must be a showing of additional facts and circumstances from which it clearly appears that the movement of the [vehicle] was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently

---

[21] Fed. R. Civ. P. 56(c).

[22] *Anderson*, 477 U.S. at 255.

[23] *Estate of Zimmerman v. S.E. Pa. Transp. Auth.,* 168 F.3d 680, 684 (3d Cir. 1999).

[24] *Connolly v. Phila. Transp. Co.*, 216 A.2d 60, 62 (Pa. 1966).

4

establishes the unusual character of the jolt or jerk, will suffice.[25]

Here, the parties dispute whether the bus was traveling too fast for the existing traffic conditions.  Plaintiff admits that the driver was not exceeding the posted speed limit, but both Plaintiff and her niece testified to repeated acceleration and hard braking by the bus driver, and point to this as evidence that the bus was traveling too fast for existing traffic conditions.[26] However, other than these subjective impressions, Plaintiff points to no evidence of excessive speed sufficient to indicate negligent operation of the bus.[27]  Moreover, although the appropriateness of the driver's speed might, in other circumstances, create a triable issue of fact, under the facts of this case such a dispute is not material, because Plaintiff has admitted that she could (and did) reasonably anticipate that the bus might accelerate or decelerate suddenly while she was descending the stairs.  She, and relatives traveling with her, testified that the stop-and-go traffic, and concomitant acceleration and braking by the driver, had been occurring for an extended period of time preceding Plaintiff's fall.  Plaintiff testified that she could see the heavy traffic through the window as she moved toward the stairs, that she held the seat-backs for

---

[25] *Id.*

[26] The bus driver was not asked about the speed at which she was driving in her deposition, but she admitted needing to alternately accelerate and decelerate in response to traffic conditions

[27] *See Young v. Greyhound Lines, Inc.*, Civ. A. No. 99-CV-1239, 2000 WL 33119425, at * 2 (E.D. Pa., Dec. 22, 2000) ("*Compare Zager v. Pittsburgh Rys.,* 165 A.2d 30, 31 (Pa.1960) (affirming finding of no negligence despite evidence that trolley car was going 'pretty fast' when its driver suddenly slammed on the brakes) *and Smith v. Pittsburgh Rys. Co.,* 175 A.2d 844, 845 (Pa.1961) (affirming finding of no negligence despite evidence that 'motorman started the car real fast,' causing plaintiff to fall to the floor) *with Connolly,* 216 A.2d 60 (Pa.1966) (affirming finding of negligence where plaintiff presented evidence that bus traveled at an excessive rate of speed in a congested area of traffic while swerving and cutting in front of other vehicles) *and Tucker v. Pittsburgh Rys.,* 37 A.2d 547 (Pa.1944) (affirming finding of negligence where plaintiff presented evidence of street car's 'abnormal acceleration' to 'five times the usual speed' in 'approaching, rounding and stopping on the curve'); *cf. Schilling v. Pittsburgh Rys.,* 145 A.2d 688, 690-91 (Pa.1958) (holding that trial court properly excluded testimony regarding speed of trolley car where 'witness was unable to testify as to speed in terms of miles per hour but only as to whether the speed was unusual or excessive'").

stability as she walked down the aisle, and that she waited briefly at the top of the stairs because she was anticipating further jerking.

Additionally, a passenger who is standing or walking on a moving vehicle must "recognize the inherent danger of loss of equilibrium"[28] even in the absence of driver negligence. "[I]t is not unusual for persons to lose their balance while standing or walking in a moving [vehicle] if an ordinary or moderate jerk occurs. . . ."[29] Plaintiff has put forth no evidence that the jerking of the bus which caused her fall as she descended the stairs also had an "extraordinarily disturbing" impact on seated passengers, which would support her claim of negligence.[30] Although Plaintiff's niece and fellow passenger, Rachel Horne, testified that the bus's operation caused her to rock in her seat, courts have required evidence of more to find negligent operation of a vehicle.[31]

Plaintiff also argues that the Megabus driver was negligent in failing to warn passengers that the bus was in stop-and-go traffic and to advise that passengers should therefore remain in their seats. Although neither party argues that the driver had a duty to warn imposed by statute, regulation, or Megabus policies, Plaintiff points to the driver's testimony that she would make announcements advising passengers to remain seated in particularly heavy traffic. Regardless of the driver's usual practice, to succeed on a negligent failure to warn claim, the Plaintiff must

---

[28] *Mervine v. Aronomink Transp. Co.,* 35 A. 2d 255, 255-56 (Pa. 1944).

[29] *Hill v. West Penn. R. Co.*, 16 A.2d 527, 528 (Pa. 1940).

[30] *Connelly*, 216 A.2d at 62.

[31] *See Watson v. Pittsburgh Rys. Co.,* 132 A.2d 718, 719 (Pa. Super. Ct. 1957) (finding negligence where plaintiff was expelled from her seat by a streetcar's jerk); *cf Smith v. Pittsburgh Rys. Co.*, 175 A.2d 844, 846 (Pa. 1961) (finding no negligence where seated passengers were thrust back in their seats by a "violent jolt," and passengers testified that it was a rough and terrible ride, but only standing passengers fell).

6

establish that: 1) Defendant had reason to know of the danger; 2) Defendant had no reason to believe that the passengers were aware of the danger; and 3) Defendant failed to exercise reasonable care to inform passengers of the dangerous condition.[32] If Plaintiff can establish these elements, she is entitled to a rebuttable presumption that she would have heeded such a warning.[33]

Here, Plaintiff admits that the congested driving conditions were consistent and readily apparent to the passengers, and moreover, as noted above, courts in Pennsylvania have held that the inherent dangers of standing and walking (and, presumably, descending stairs) in moving vehicles are readily apparent to passengers. Therefore, the Court finds that Defendant was not under a duty to issue a warning regarding the risks of descending the stairs on a moving bus in heavy traffic, and Plaintiff is not entitled to a presumption that she would have heeded such a warning.[34] Given Plaintiff's prior knowledge that the bus was accelerating and decelerating in stop-and-go traffic and, in the absence of other evidence, the Court cannot infer that Defendant had a duty to warn or that a warning by the driver would have deterred Plaintiff from descending the stairs to use the restroom.[35]

## IV. CONCLUSION

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that a trier of

---

[32] *Wolfe v. McNeil-PPC, Inc.,* 773 F. Supp. 2d 561, 567 (E.D. Pa. 2011) (citing *Overbeck v. Cates,* 700 A.2d 970, 972 (Pa. Super. Ct. 1997) and Restatement (Second) of Torts § 388).

[33] *Pavlik v. Lane Ltd. ,* 135 F.3d 876, 881 (3d Cir. 1998).

[34] *Pavlik ,* 135 F.3d at 881 ("one way the defendant can rebut this presumption [that an adequate warning would have been heeded] is by demonstrating that the plaintiff was previously fully aware of the risk of bodily injury posed . . .")

[35] *Id.*; *see also Phillips v. A-Best Prods. Co.*, 665 A. 2d 1167, 1171 (Pa. 1995)

fact could not reasonably conclude that the movement of the bus was unusual, extraordinary, or beyond Plaintiff's reasonable expectation.[36] On the contrary, the record evidence and testimony indicate that Plaintiff did anticipate the possibility of the bus jerking while she was on the stairs, and paused at the top of the stairs in an attempt to time her descent. Because Plaintiff cannot show that a warning was necessary in light of obvious traffic conditions, that the movement of the vehicle while she was descending the stairs was beyond her reasonable anticipation, or that the accident itself demonstrates that the operation of the bus was negligent, the Court grants summary judgment in favor of Defendant.

      An appropriate Order follows.

---

[36] *Young v. Greyhound Lines, Inc.,* at *3.